**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

    Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **TERRY FULLER**,<br><br>    Plaintiff,<br><br>v.<br><br>**OREGON DEPARTMENT OF CORRECTIONS,** an agency of the State of Oregon**; DEREK MCCORKHILL; ROBERT COOLEY**; **ANDREW HERNANDEZ; CORNELL CRUZE; JAMIE YOUNG;** and **ALICHA STEVENSON,**<br><br>    Defendants. | Case No. 3:19-CV-01059-BR<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff alleges:

## INTRODUCTION

    1.    Plaintiff Terry Fuller was seriously injured by members of a prison gang on June 1, 2018, at the CCCI, as the result of several staff employees of defendant Oregon Department of

PAGE 1 – **FIRST AMENDED COMPLAINT**

Corrections (ODOC) having deliberately placed him into a very dangerous situation. These ODOC employees were warned that placing Fuller into housing Unit O with known active gang members would result in his being assaulted, injured, and possibly killed. But these ODOC employees moved Fuller into housing Unit O anyway without regard for Fuller's health and safety. Their actions caused Fuller to be viciously assaulted by known active gang members resulting in injury to him and Fuller's person. Defendants violated Fuller's federal constitutional rights by failing to protected him against known and serious threats to his safety. Defendants acted under the color of law and were deliberately indifferent to Fuller's constitutional rights. Fuller seeks equitable relief, compensatory and punitive damages, as well as attorney fees and costs as set forth below.

## PARTIES

2.      Defendant Oregon Department of Corrections (ODOC) is an agency of the State of Oregon and conducts regular, sustained business in Multnomah County.

3.      Fuller is and was at all times mentioned herein, a prisoner of the state of Oregon in ODOC custody. He is currently confined in Two Rivers Correctional Institution (TRCI).

4.      Defendant ODOC operates ODOC facilities, including Coffee Creek Correctional Facility ("CCCF") and TRCI and is an agency of the State of Oregon.

5.      Defendant Derek McCorkhill is an employee of the ODOC who at all times mentioned herein, held the rank of captain and was assigned to CCCF.

6.      Defendant Sergeant Robert Cooley is an employee of the ODOC who at all times mentioned herein, held the rank of sergeant and was assigned to CCCF.

7.      Defendant Corrections Officer Andrew Hernandez is an employee of the ODOC who at all times mentioned herein, held the rank of corrections officer and was assigned to

PAGE 2 – **FIRST AMENDED COMPLAINT**

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

CCCF.

8. Defendant Corporal Cornell Cruze is an employee of the ODOC who at all times mentioned herein, held the rank of corporal and was assigned to CCCF. 8. Defendant Lieutenant Jamie Young is an employee of the ODOC who at all times mentioned herein, held the rank of lieutenant and was assigned to CCCF.

9. Defendant Corporal Alicha Stevenson is an employee of the ODOC who at all times mentioned herein, held the rank of corporal and was assigned to CCCF.

10. These Defendants are directly and personally responsible and liable for violations of Plaintiff's civil rights as set forth below. At all times herein, Defendants were acting under color of state law when committing the illegal acts; Defendants acted in bad faith and violated clearly established laws which reasonable prison officials knew or should have known; retaliating against a prisoner for exercising his free speech rights is illegal as is purposefully endangering a prisoner's safety. Each Defendant is sued in their individual and official capacity.

## FACTUAL ALLEGATIONS

11. On May 3, 2018, Fuller's brother, Dennis Guthrie, called CCCF to inform staff that Fuller was arriving the following day and could not be housed in Units O or Q where inmates who have been previously incarcerated in ODOC are housed, due to severe security risks to Fuller's safety. One being the already verified standing "kill order" on Fuller by the Sureños (a street and prison gang with members in CCCF). This meant that there was an order that members of the Sureños gang were to kill Fuller if they encountered him. Fuller's brother was assured that he would be kept safe and that ODOC already knew of and confirmed Fuller's standing "kill order" from California.

12. On May 4, 2018, Fuller arrived at CCCF. Upon arrival in Receiving and

PAGE 3 – **FIRST AMENDED COMPLAINT**

Departure (R&D) Fuller asked Sgt. Cooley to notify Security Threat Management (STM) that he needed to speak to them immediately about his safety concerns. Sgt. Cooley instructed Fuller to fill out an "Inmate Conflict Report" and place it in the institutional mail. Sgt. Cooley also stated that he had talked to the intake lieutenant, Lt. Taylor, and that Fuller would be safe. He also informed Fuller that staff knew of his safety issues and that STM was in agreement with Fuller's being housed in Unit O. Fuller informed Sgt. Cooley that he was a dropout Sureño from California and that he could not be housed around or with active Sureños due to having a standing kill order. Fuller stated that would rather be placed in segregation for his safety. Sgt. Cooley stated that Fuller was safe in Unit O and if he was smart, he would not "go that route." This intimidated Fuller into being housed in Unit O. Fuller was placed in cell 117A.

13. That night Fuller filled out an Inmate Conflict Report and placed it in the institutional mail to the intake lieutenant at CCCF.

14. Sometime between May 7-11, 2018, Fuller filled out an inmate communication form ("kyte") to the residing STM lieutenant at CCCF, expressing his safety concerns.

15. On May 11, 2018, in the medication line at CCCF, Fuller spoke to CO Hernandez and asked to speak to the STM officer. CO Hernandez informed Fuller that the STM was not there that day. Fuller told CO Hernandez that he was a dropout gang member and housed in a unit surrounded by active street gang inmates and could not be there. He later came to Fuller's cell, O 117A, and pulled him into the corridor. CO Hernandez said he talked to the STM officer, Young, and asked if Fuller wanted to be moved to Unit A with first time offenders. Fuller told him he would still be in danger, but yes, he wanted to be moved. Unit O orderlies who observed this conversation informed the Sureños active members that Fuller was talking to a corrections officer in the hallway, further endangering Fuller. CO Hernandez said he was going to talk to

PAGE 4 – **FIRST AMENDED COMPLAINT**

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

STM Lt. Young again and move Fuller. Staff did not move Fuller and left him in Unit O where he was later assaulted.

16. Between May 14-25, 2018, Fuller sent another Inmate Conflict Report to the intake lieutenant (Lt. Taylor) and received no response, causing more fear and mental anguish.

17. On June 1, 2018, Fuller was assaulted by two active Sureños in front of a Sgt. and two corrections officers. Fuller was hit by both Sureños several times suffering a laceration to his lower right eye, extensive swelling to the right side of his face and jaw causing his dentures to shift and something in Fuller's right cheek to crack or shift as well as two broken right ribs. The acting sergeant, Cpl. Cruze, and two corrections officers took photographs of Fuller's face and right side while asking him, "Did you tell the staff in R&D intake that you were a drop out?" Fuller told them that he had and that he also submitted the correct forms appropriately with no response. Fuller had even gone as far as asking for special housing due to his safety concerns. Fuller was given a cursory medical exam by a nurse named Rick who gave him a bag of ice, two Band-Aids and was told to take Motrin. Fuller explained that he felt his teeth and something in his face shifted and that every breath caused extreme pain as well as serious headaches, pain and discomfort in his head, face and side. Fuller asked for x-rays and was denied even though he felt his ribs break. On June 1, 2018, Fuller again submitted another Inmate Conflict Report describing the assault on him and that he had received no response again from STM or the intake lieutenant. Fuller was moved to Unit A after the assault and told by Cpl. Cruze and other officers to inform staff if there were any more safety concerns so they could get him out of there. Fuller informed them that there were still active Sureños in Unit A and was told again he would be safe. Fuller submitted multiple kytes to medical to get x-rays because he was having difficulty breathing and severe pain. Fuller informed medical that he was suffering severe headaches, loss

PAGE 5 – **FIRST AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

of sleep, blurred vision, severe pain in his side, face and head, popping and clicking in his ribs, shortness of breath, as well as his dentures not lining up.

18. On June 13, 2018, Fuller was again approached by two active Sureños and told to check in back home with Fuller's gang and to produce Fuller's "paper-work," or be "dealt with." The reference to Fuller's paperwork meant that he needed to demonstrate that he was an active Sureño. "Dealt with" indicated he would be assaulted or stabbed if he could not prove his active status. Since Fuller was a Sureños drop out he obviously could not do this. It was unsafe for Fuller to approach staff, so he called home and had Fuller's brother, Dennis Guthrie, call the prison to inform them of the threat, in the way Cpl. Cruze and the COs instructed. Fuller then went to his cell to wait for staff. Cpl. Stevenson came to Fuller's cell at A-108A, pulled him out to A/B corridor and asked what was wrong. Fuller explained that he was going to be assaulted again or stabbed. She then asked if Fuller wanted to be placed in protective custody, Fuller said, "Yes." She had Fuller placed in cuffs and into segregation. Two hours later Fuller was given a major rules violation by CO Gonzales from Cpl. Stevenson for "Unauthorized Area 1" and "Disobedience of an Order 2," thereby punishing him harshly for only following the orders of Cpl. Cruze, Lt. Taylor and other corrections staff. This was clearly retaliation for informing the institutional staff of Fuller's new threat and safety concerns.

19. On around June 13, 2018, Fuller submitted an Inmate Conflict Report about the incident to the intake lieutenant and a kyte to Cpt. McCorkhill. Fuller explained the situation and asked why he was being punished for following staff directions. This disciplinary write up has caused Fuller emotional distress.

20. On June 15, 2018, Cpl. Stevenson told Fuller that his misconduct report would be dropped and that he should not have received it. But the misconduct was not dropped. Fuller was

PAGE 6 – **FIRST AMENDED COMPLAINT**

then transferred to a dropout unit at TRCI on June 19, 2018.

21.     On June 25, 2018, at TRCI, Fuller was given a hearing for the major rules' violations from Cpl. Stevenson at CCCF. Fuller requested an investigation and to call witnesses as is Fuller's right. Fuller was denied an investigation and found guilty. Fuller explained to the hearings officer that there was camera footage from Unit A at CCCF showing that Cpl. Stevenson came to Fuller's cell and pulled him out into corridor A/B and talked to him. This video footage would have shown that in fact Fuller was not out in corridor A/B refusing to go back inside the unit. Fuller did not "cause her to be called down to deal with it" as she alleged in her falsified misconduct report. The camera footage would have showed that Cpl. Stevenson lied. Fuller was given seven days segregation, seven days loss of privileges and a loss of an incentive level. This affected Fuller's program for at least six months.

22.     On June 27, 2018, Fuller wrote a kyte to Cpt. McCorkhill explaining the improper "finding of guilt" on the misconduct report that was by Cpl. Stevenson for only following the directions of his staff. Fuller asked Cpt. McCorkhill to overturn the hearing officers' findings and restore Fuller's previous status and incentive level. Cpt. McCorkhill responded, stating that he had made a request to TRCI Assistant Superintendent Jackson to restore Fuller's status and incentive level.

23.     Each individual acted under color of law and in their personal and professional capacities when they ignored Fuller's cries for protection and deliberately placed him in harm's way.

24.     Fuller employed the prisoner grievance procedure available at CCCF and TRCI and exhausted the grievance procedure in full.

25.     Fuller filed a Tort Claims Notice within the time allotted by statute.

PAGE 7 – **FIRST AMENDED COMPLAINT**

## CLAIM I

## (42 U.S.C. § 1983 – Violation of Constitutional Rights)

## (against Defendants McCorkhill, Cooley, Hernandez, Cruze, Young, and Stevenson)

26. Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

27. By failing to protect Fuller and exposing him to violence at the hands of members of prison gangs, as alleged above, Defendants violated Plaintiff's Eighth Amendment Rights under the U.S. Constitution

28. By punishing Fuller in retaliation for having complained of and grieved defendants' unlawful conduct, defendants violated Fuller's First Amendment Rights under the U.S. Constitution.

29. All of these claims mentioned caused Fuller mental, emotional and physical injuries along with First Amendment injuries.

30. Fuller has no plain, adequate or complete remedy at law to redress the wrongs described herein. Fuller has been and will continue to be irreparably injured by the conduct of the defendants unless the Court grants the declaratory and injunctive relief which he seeks.

31. Defendants' acts were willful and malicious and done with reckless indifference to Fuller's protected rights.  Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

32. Fuller is entitled to attorney fees, costs and disbursements pursuant to 42 U.S.C. § 1988.

PAGE 8 – **FIRST AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

## CLAIM II

### (Negligence)

### (against Defendant ODOC)

33. Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

34. ODOC was negligent in exposing plaintiff to known dangers as alleged above.

35. ODOC knew or should have known that housing plaintiff Fuller in a unit with members of a gang that intends him harm would result in Fuller's suffering physical harm and severe physical and mental pain and suffering.

36. ODOC failed to use reasonable care in incarcerating Fuller as alleged above. ODOC's conduct was negligent.

37. ODOC owes Fuller a higher standard of care because of the nature of incarceration. As a ward of the State, ODOC manages all aspects of Fuller's care. Had Fuller been a free person, he would have been able to avoid these gang members. However, as an incarcerated person, Fuller's pleas for protection were ignored. ODOC voluntarily took the custody of Fuller under circumstances such as to deprive him of normal opportunities for protection, and created a non-delegable duty to ensure that Fuller was safe. ODOC did not meet its obligation to protect Fuller

38. ODOC's conduct was unreasonable in light of the risk of harm to Fuller.

39. As a consequence of ODOC's negligence, Fuller suffered physical harm and severe physical and mental pain and suffering.

40. Fuller provided the State of Oregon with a timely Tort Claims Notice.

41. ODOC's conduct was a substantial factor in causing harm to Fuller.

PAGE 9 – **FIRST AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

42. As a result of ODOC's conduct, Fuller suffered non-economic damages in an amount to be proved at trial.

43. Fuller is entitled to a prevailing party fee, his costs and his disbursements.

## PRAYER

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting Plaintiff:

a) A declaration that the acts and omissions described herein violated Fuller's rights under the U.S. Constitution;

b) A preliminary and permanent injunction ordering defendants to remove the major rules violation from Fuller's record;

c) A preliminary and permanent injunction ordering defendants to take training courses on protecting wards of the state;

d) An award of compensatory damages to Fuller in a sum that is just as determined by a jury, here alleged to be $300,000;

e) An award of punitive damages in a sum that is just as determined by a jury, he alleged to be $200,000.

f) Plaintiff's costs and attorney fees in this suit, and

g) Any additional relief this court deems just, proper, and equitable.

PAGE 10 – **FIRST AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

**Plaintiff requests a trial by jury on all matters so triable.**

DATED: November 1, 2019

                                     **Law Offices of Daniel Snyder**

                                     *s/ John Burgess*
                                    John Burgess, OSB No. 106498
                                    johnburgess@lawofficeofdanielsnyder.com
                                    Tel: (503) 241-3617 / Fax: (503) 241-2249
                                    Of Attorneys for Plaintiff

PAGE 11 – **FIRST AMENDED COMPLAINT**

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249